SEALED BY ORDER OF THE COURT

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED
AUG 15 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

YASMIN PIRANI

CR 24 465 SI

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 1347 – Health Care Fraud

18 U.S.C. § 1035 – False Statements Related to Health Care Matters

18 U.S.C. § 982(a)(7) & 28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

*/S/ Foreperson of the Grand Jury*
Foreman

Filed in open court this 15th day of

August, 2024.

Clerk

Bail, $ Warrant

8/15/24
Hon. Kandis A. Westmore, U.S. Magistrate Judge

SEALED BY ORDER OF THE COURT

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

FILED
AUG 15 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YASMIN PIRANI,<br><br>Defendant. | CASE NO. CR 24 465 SI<br><br>VIOLATIONS:<br>18 U.S.C. § 1347 – Health Care Fraud<br>18 U.S.C. § 1035 – False Statements Related to Health Care Matters<br>18 U.S.C. § 982(a)(7) & 28 U.S.C. § 2461(c) – Forfeiture Allegation<br><br>SAN FRANCISCO VENUE |

## INDICTMENT

The Grand Jury charges:

### Introductory Allegations

At all times relevant to this Indictment:

1. Defendant YASMIN PIRANI ("PIRANI"), in the Northern District of California and elsewhere, executed a scheme and artifice to defraud Medicare, and made false statements in written orders prescribing orthotics for Medicare beneficiaries.

INDIVIDUALS AND ENTITIES

2. Defendant PIRANI resided in Canada and in the State of California and was a licensed family practice doctor who treated patients in California and Washington, including in the Northern District of California, and worked for Company 1 as an independent contractor.

3. Company 1 was an Arizona for-profit corporation registered on December 1, 2011. Company 1 operated as a purported telemedicine company.

4. Medicare beneficiary D.D. resided in the Northern District of California.

THE MEDICARE PROGRAM

5. The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals who were the age of 65, or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. The benefits available under Medicare were governed by federal statutes and regulations. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

6. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

7. Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

8. Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment, prosthetics, orthotics, and supplies ("DME") that were ordered by licensed medical doctors or other qualified health care providers.

9. Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

10. To order or certify items and/or services to beneficiaries in the Medicare program, providers had to fill out an application and execute a written provider agreement, known as CMS Form 855-O. The application contained certifications that the provider agreed to abide by the Medicare laws and regulations, and that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

## DURABLE MEDICAL EQUIPMENT

11. Medicare covered an individual's access to DME, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "braces"). OTS braces required minimal self-adjustment for appropriate use and did not require expertise in trimming, bending, molding, assembling, or customizing to fit the individual.

12. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment or diagnosis of the beneficiary's illness or injury and prescribed by a licensed physician. In claims submitted to Medicare for the reimbursement of provided DME, providers were required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and provider number of the provider who prescribed or ordered the equipment. To be reimbursed from Medicare for DME, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

13. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. For certain DME products, Medicare promulgated additional requirements that a DME order was required to meet for an order to be considered "reasonable and necessary." For example, for OTS knee braces billed to Medicare under the Healthcare Common Procedures Coding System ("HCPCS") Code L1851, an order would be deemed "not reasonable and necessary", and reimbursement would be denied unless the ordering physician documented the beneficiary's knee instability using an objective description of joint laxity determined through a physical examination of the beneficiary.

## TELEMEDICINE

14. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology to interact with a patient.

15. Telemedicine companies provided telemedicine services to individuals by hiring doctors and other health care providers. Telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed insurance or received payment from patients who utilized the services of the telemedicine company.

16. Medicare Part B covered expenses for specified telemedicine services if certain requirements were met. These requirements included, but were not limited to, that (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via a two-way, real-time interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telemedicine consultation with a remote practitioner.

COUNT ONE: (18 U.S.C. § 1347 – Health Care Fraud)

17. Paragraphs 1 through 16 of this Indictment are re-alleged and incorporated as if fully set forth here.

18. Between in or around April 2018 and in or around April 2019, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

YASMIN PIRANI,

did knowingly and willfully execute a scheme and artifice to defraud a health care benefit program, as that term is defined under Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

PURPOSE OF THE SCHEME AND ARTIFICE

19. It was a purpose of the scheme and artifice for defendant YASMIN PIRANI and her co-schemers to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare for DME products that were (i) procured through the payment of kickbacks and bribes, (ii) medically unnecessary, and (iii) not eligible for Medicare reimbursement; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit.

MANNER AND MEANS OF THE SCHEME

20. The manner and means by which defendant YASMIN PIRANI and her co-schemers sought to accomplish the purpose of the scheme included, among other things, the following:

21. On or about November 18, 2016, YASMIN PIRANI certified to Medicare that she would comply with all Medicare rules and regulations, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare. Despite this certification, YASMIN PIRANI proceeded to present and cause to be presented false and fraudulent claims for payment by Medicare as described below.

22. YASMIN PIRANI agreed with others at Company 1 to write brace orders for Medicare beneficiaries in exchange for approximately $20 per patient consultation.

23. YASMIN PIRANI gained access to Medicare beneficiary information for thousands of Medicare beneficiaries from Company 1 in order for YASMIN PIRANI to sign brace orders for those beneficiaries.

24. Neither YASMIN PIRANI nor Company 1 billed Medicare for telemedicine consultations with beneficiaries. Instead, Company 1 solicited illegal kickbacks and bribes from brace suppliers in exchange for brace orders that were signed by YASMIN PIRANI and others.

25. Brace orders issued by YASMIN PIRANI at the direction of Company 1 were forwarded to brace suppliers for fulfillment. The brace suppliers submitted and caused the submission of claims to Medicare based on the orders signed by YASMIN PIRANI.

26. Owners and operators of Company 1 paid and caused payments to be made to YASMIN PIRANI and others to sign brace orders and cause the submission of claims for braces that were medically unnecessary and not eligible for reimbursement from Medicare, in order to increase revenue for themselves and their co-schemers.

27. YASMIN PIRANI ordered braces that were medically unnecessary, for patients with whom she lacked a pre-existing doctor-patient relationship, without a physical examination, and without any conversation with the beneficiary or based solely on a short telephonic conversation with the beneficiary.

28. YASMIN PIRANI and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of brace orders and other records, all to support claims to Medicare for braces that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

29. YASMIN PIRANI and others concealed and disguised the scheme by preparing and causing to be prepared false and fraudulent documentation, and submitting and causing the submission of false and fraudulent documentation to Medicare, including documentation in patient files and brace orders in which (a) YASMIN PIRANI falsely stated that she determined through her interaction with the Medicare beneficiary that a particular course of treatment, including the prescription of braces, was reasonable and medically necessary; (b) YASMIN PIRANI falsely attested that the information in the medical record was true, accurate, and complete; (c) YASMIN PIRANI falsely diagnosed the Medicare beneficiary with certain conditions to support the prescription of certain braces; and (d) YASMIN PIRANI concealed the fact that she did not have any interaction with the Medicare beneficiary or that her interaction was brief and telephonic.

30. YASMIN PIRANI and others submitted and caused the submission of false and fraudulent claims to Medicare in excess of approximately $35.2 million for braces that were procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented, for which Medicare paid approximately $18.5 million.

In violation of Title 18, United States Code, Sections 1347 and 2.

<u>COUNT TWO</u>: (18 U.S.C. § 1035 – False Statements Related to Health Care Matters)

31. Paragraphs 1 through 16 and 19 through 30 of this Indictment are re-alleged and incorporated as if fully set forth here.

32. On or about April 2, 2019, in the Northern District of California and elsewhere, the defendant,

YASMIN PIRANI,

in a matter involving a health care benefit program, specifically Medicare, did knowingly and willfully (a) falsify, conceal, and cover up by trick, scheme, and device material facts, and (b) make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, in that defendant YASMIN PIRANI prepared and signed brace orders in which (a) YASMIN PIRANI falsely stated that she determined through her interaction with the Medicare beneficiary that a particular course of treatment, including the prescription of braces, was reasonable and medically necessary; (b) YASMIN PIRANI falsely attested that the information in the medical record was true, accurate, and complete; (c) YASMIN PIRANI falsely diagnosed the Medicare beneficiary with certain conditions to support the prescription of certain braces; and (d) YASMIN PIRANI concealed the fact that she did not have any interaction with the Medicare beneficiary or the interaction was brief and telephonic, as set forth below.

| **Count** | **Approximate Date** | **Medicare Beneficiary** | **Record Containing False Statements and Concealment of Material Facts** |
|---|---|---|---|
| 2 | April 2, 2019 | D.D. | Detailed written orders for knee braces, back brace, shoulder brace, ankle brace and wrist brace. |

In violation of Title 18, United States Code, Section 1035 and 2.

FORFEITURE ALLEGATION: (18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c))

33. The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c).

34. Upon a conviction for Count One or Two of this Indictment, the defendant,

YASMIN PIRANI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to a sum of money equal to the gross proceeds obtained as a result of the offense.

If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

///

///

///

///

///

///

///

///

///

All pursuant to Title 18, United States Code, Section 982(a)(7), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: 8/15/2024

A TRUE BILL.

/Foreperson/
FOREPERSON

ISMAIL J. RAMSEY
United States Attorney

Robert Leach
ROBERT S. LEACH
Assistant United States Attorney

GLENN LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

Babu Kaza / by RSL
S. BABU KAZA
Trial Attorney, Fraud Section
U.S. Department of Justice